# IN THE COURT OF APPEALS OF IOWA

No. 18-1558
Filed November 21, 2018

**IN THE INTEREST OF J.M.,**
**Minor Child,**

**D.L., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

A mother appeals the juvenile court's termination of her parental rights. **AFFIRMED.**

Teresa M. Pope of Branstad Law, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kimberly Graham of Graham Collaborative Law, Indianola, guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

A mother appeals the juvenile court order terminating her parental rights. We find an extension to work toward reunification is not warranted, the evidence supports termination, termination is in the child's best interests, and no exceptions apply. We affirm the juvenile court.

## I.     Background Facts & Proceedings

D.L. is mother to J.M., born in 2015. The mother has struggled with methamphetamine addiction since 2008, which led to a prior termination of parental rights. J.M. tested positive for methamphetamine and amphetamine at birth. The mother was enrolled in substance-abuse treatment at the time. On September 15, 2016, the mother tested positive for and admitted recent methamphetamine use to her parole officer. The child tested positive to methamphetamine exposure and the mother consented to a temporary removal, which the court ordered September 20. The mother also admitted to having mental-health issues, including post-partum depression, severe depression, and anxiety.

On December 2, the court adjudicated J.M. as a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6) (2016). The child was placed with a maternal cousin and great-grandmother.[1] The mother participated in recovery court, outpatient substance-abuse treatment, and mental-health services. She was employed and had stable housing.

---

[1]  In November 2017, following an overdose in the home, the maternal cousin was asked to leave, and the child stayed with the great-grandmother.

In February 2017, the mother entered an inpatient treatment program. She participated in mental-health therapy on a weekly basis. For several months she appeared to be doing well with her sobriety and gradually received extended visitation and overnights with the child. In June, the mother tested positive for methamphetamine, was discharged from her inpatient treatment, and the Iowa Department of Human Services (DHS) returned her to supervised visitation with the child. She began a new outpatient treatment program, and occasionally participated in recovery court.

At a permanency hearing in October 2017, the mother had completed a new substance-abuse evaluation and was on a wait list for a new inpatient program. The mother had been discharged from her mental-health treatment due to her failure to participate, and she reported methamphetamine use in early October. The court ordered the State to file a petition to terminate parental rights, which was filed December 7.

The mother successfully completed inpatient treatment from November to March 16, 2018. She had overnight visits with the child by the end of treatment. She then participated in outpatient substance-abuse treatment and graduated on May 8, attended recovery meetings, and engaged in recovery court programming. A family team meeting discussed a timeline for a trial home visit and a return of the child to the mother's custody. Meanwhile, in late April and again in May, the mother tested positive for methamphetamine—while actively participating in recovery programs and knowing the child was starting a trial home visit on May 4 with reunification scheduled for June 1. She was discharged from recovery court on May 23 for failure to attend programming.

On May 31 and June 13, the court held a termination of parental rights hearing. The court heard testimony from the mother, the DHS worker, and the maternal great-grandmother. At the hearing, the guardian ad litem advised termination was not in the child's best interests. During the hearing, the court noted its concern for the mother's relapses when she was on the verge of reunification, and discussed the self-sabotage it observed.

On August 24, 2018, the juvenile court terminated the mother's parental rights pursuant to section 232.116(1)(h) and (*l*) (2017).[2] She appeals.

## II.    Standard of Review

We review termination-of-parental-rights cases de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "There must be clear and convincing evidence of the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Where there is clear and convincing evidence, there are "no serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (citation omitted). The paramount concern in termination proceedings is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011).

## III.    Analysis

**A. Reunification Extension.** On appeal, the mother claims she requested an additional six months to work toward reunification. The mother did not petition

---

[2]   The court also terminated the parental rights of the child's unknown father pursuant to Iowa Code section 232.116(1)(b) and (e).

the juvenile court for an extension and did not ask for additional time during the hearing outside of a request to establish a guardianship. Even if we consider the guardianship request as a request for an extension, for the court to grant the section 232.104(2)(b) extension she claims on appeal, it must be able to enumerate specific factors, conditions, and changes it expects to be complete within six months to show the issues leading to removal will no longer exist. In this case, the evidence does not support an extension.

The statutory time frame for a parent to demonstrate her ability to be a parent for a child three years of age or younger is six months. *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018). The mother has had two years, four times the statutory period, of reunification efforts. Her sustained periods of sobriety have been in inpatient treatment. Each time she returns to the community and is close to reunification, she relapses and has to start over. The mother's frequent relapses do not instill confidence with this court she would be able to maintain sobriety in the community within six months to warrant an extension. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). We find the evidence would not support an additional six months to work toward reunification.

**B. Sufficiency of the Evidence.** The mother claims there is not sufficient evidence to support termination of her parental rights. We need only find grounds to terminate on one of the sections to affirm. *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015). We find sufficient evidence supports termination under section 232.116(1)(h).

To terminate a parent's rights under section 232.116(1)(h), the court must find the child is three years old or younger, has been adjudicated a CINA, has been

removed from the parent's custody for at least six of the last twelve months with no trial period at home over thirty days, and cannot be returned to the parent's care at the present time. The first three elements are clearly met in this case. The only question is whether the child could be returned to the mother's custody.

The mother did not exhibit an ability to remain sober in the community. Her extended sobriety periods occurred during inpatient treatment. Each time the mother progressed to have extended visitation and even weekend visits, she would relapse despite the treatment programs she was attending. On appeal, the mother argues she could have taken the child home at the time of the hearing.

When she testified at the termination hearing, she answered, "No" when asked if the child could be returned to her that day, though she later stated she had the tools in place for the child to be returned to her. While the mother might have the tools for the child to be returned, she had not demonstrated the ability to consistently use them in the community. In particular, her relapse less than two weeks before the termination hearing—when she was having overnight weekend visits with the child and was about to bring the child into her home on a more permanent basis—prevents the child's return. We find the child could not be returned to the mother's care at the time of the hearing. We find clear and convincing evidence that grounds for the termination of D.L.'s parental rights were established under section 232.116(1)(h).

**C. Best Interests of the Child.** The mother claims termination is not in the child's best interests under section 232.116(2). Instead, she claims returning the child to her care is in the child's best interests. If not returned to her care, she

claims a guardianship would be the most appropriate placement to allow her to stay in the child's life.

Our consideration of the best interests of the child "gives primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). This means if grounds for termination have been established, we cannot deny a child a safe, permanent home based on the hope the parent will someday learn to be a parent and provide a safe and stable home for the child. *Id.*

We look to a parent's past performance for indications of the quality of future care the parent is capable of providing. *A.B.*, 815 N.W.2d at 778. The mother was using methamphetamine while pregnant with the child, then again one year later in a way exposing the child to the drug. In the two years since the child was removed, the mother has been in and out of treatment programs, each time relapsing during or shortly after the program, including less than two weeks prior to the termination hearing. The child is adoptable and in need of permanency. The mother's actions do not demonstrate the ability to provide a safe, stable, permanent home furthering the child's physical, mental, and emotional needs and growth. We find returning the child to the mother is not in the child's best interests.

The mother alternatively suggests the best interests of the child would be to establish a guardianship with the great-grandmother due to the child's bond to herself and the great-grandmother. We note the child is three years old, and the great-grandmother is seventy-four years old. To consider the great-grandmother as a viable permanent guardian requires we believe her health and energy levels

will allow her to keep up with a growing child for another fifteen years. While we have no reason to question the great-grandmother's health or her family's longevity, we cannot find such a placement would provide the necessary supervision and growth on a permanent basis.

We also note the great-grandmother has had difficulty recognizing when the mother has relapsed, and one of the child's caretakers overdosed in the great-grandmother's home in November 2017. The great-grandmother's testimony indicated she viewed guardianship as a temporary solution with the child returning to the mother as soon as possible. Rather than provide a permanent home for the child, this would prolong the uncertainty for the child with the mother coming in and out of the child's life on the whims of her addiction-and-treatment cycle and a guardian who would be almost ninety by the time the child turns eighteen.

While we have no doubt the mother and great-grandmother love the child, we do not agree the child's best interests lie in remaining in their custody. We find termination to be in the child's best interests.

**D. Exceptions.** The mother claims two exceptions permitting the court to not terminate her parental rights apply. First, she notes the child has been in the custody of a relative from removal to the time of trial. *See* Iowa Code § 232.116(3)(a). She also claims termination would be detrimental to the child due to their close bond. *See id.* § 232.116(3)(c).

The court declined to apply the exceptions due to "the mother's long substance abuse history, coupled with her unwillingness or inability to adequately address her substance abuse and mental health issues." The mother has not shown the relative placement exception should apply outside the context of a

guardianship, which we found not in the child's best interests above.  We also agree with the district court that while a bond exists between the mother and child, the child is only three years old and the bond "does not overcome the need for permanency."

We affirm the juvenile court's decision terminating the mother's parental rights.

**AFFIRMED.**